UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

UNITED STATES OF AMERICA,                          :

   - against -                                                     :        17 Cr. 630 (ER)

IRINA DILKINSKA,
                                   Defendant.       :

--------------------------------------------------------------------X

# SENTENCING MEMORANDUM OF LAW
# FOR IRINA DILKINSKA

                                                            John P. Buza
                                                            Konta, Georges, and Buza, P.C.
                                                             233 Broadway, Suite 900
                                                             New York, New York 10279
                                                              212-710-5166

                                                             *Attorney for Irina Dilkinska*

Dated: New York, New York
         March 20, 2024

## Konta, Georges, and Buza, P.C.
233 Broadway, 9th Floor
New York, NY 10279
212-710-5166 (Tel.)
212-710-5162 (Fax)
johnpbuza@aol.com

March 20, 2024

**VIA ECF AND MAIL**
The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

        Re: *United States v. Irina Dilkinska*,
           17 Cr. 630 (ER)

Dear Judge Ramos:

  Irina Dilkinska's life has always been filled with the satisfaction and pleasure wrought by hard work. Since she was a little girl, she strived to be a fundamentally good, hardworking woman. She also strived to be a loving wife and mother. As a Bulgarian attorney, Ms. Dilkinska diligently worked many jobs in the legal profession. Like many women though, her once promising career got completely sidelined by motherhood. Once her children were old enough, Ms. Dilkinska was eager to start working again. There is no question that she made mistakes in the job that followed, but never in her wildest imagination, did she ever expect to be imprisoned in a country she has never been to thousands of miles away from her family. This letter is respectfully submitted pursuant to Rule 32 of the Federal Rules of Criminal Procedure and sets forth several matters that Ms. Dilkinska will raise to aid in the determination of an appropriate sentence, serving the interests of justice, and the sentencing goals of 18 U.S.C. § 3553(a).

  According to the Presentence Report (hereinafter "PSR"), Ms. Dilkinska was arrested and remanded on March 20, 2023, on the day she arrived in the United States after she was extradited from Bulgaria.[1] On November 9, 2023, she pleaded guilty to Counts One and Two of the superseding information, charging her with conspiracy to commit wire fraud and money laundering in violation of 18 U.S.C. § 371. Each count carried a maximum term of imprisonment of five years. For the reasons articulated below, I respectfully submits that any sentence more than time-served would be greater that necessary to comply with the goals of 18 U.S.C. § 3553(a). Ms. Dilkinska's unique role in this case, together with the devastating situation she finds herself

---

[1] PSR Paragraph 63 hereinafter "PSR ¶" 63.

in all suggest that a sentence of time-served is appropriate. Indeed, but for the self-inflicted tragedies associated in this case, Ms. Dilkinska's entire life has been exemplary. This is not only evidenced by her background, but also by the way she has conducted herself while imprisoned in this matter.

## **BACKGROUND**

Irina Andreeva Dilkinska was born on October 3, 1981, in Sofia, Bulgaria, to Andrey Tenev and Donka Teneva.[2] She is the older of two children and both her parents successfully provided for her.[3] Ms. Dilkinska was fortunate to grow up in a happy home where she was raised by her parents and grandparents.[4] In 2010, she married her husband and went on to have two children.[5] The two children are currently 13 and 11 years old. Despite the devastating situation that the family finds itself in at the time of this writing, they remain deeply supportive of her and are desperately awaiting her return home.

Ms. Dilkinska's academic background and subsequent career is nothing short of remarkable. Between 2000 and 2005, she studied international oil and gas law in Moscow, Russia.[6] Then in 2008, she earned a master's degree in international law in the United Kingdom.[7] She has been a licensed attorney ever since her graduation in 2008.[8] Indeed, Ms. Dilkinska's role in the instant conspiracy stemmed from the actions she took as legal counsel, while in Bulgaria, on behalf of her employers.[9]

Ms. Dilkinska has made a series of enormous mistakes that led to her arrest. These mistakes stem from a combination of not wanting to leave the first decent job she was able to get following an extended maternity leave, not wanting to stand up to her charming and manipulative employers, and from willfully blinding herself of the situation she was becoming increasingly mired in. Despite these mistakes, she is a fundamentally decent person who is worthy of a second chance. Moreover, she is clearly capable of being a contributing member of society.

The letters submitted on Ms. Dilkinska's behalf and written by people who know her best reveal her true nature — that of a good person who is kind, caring, and compassionate, and who has much to offer. Vasil Mutafchiev, Ms. Dilkinska's brother-in-law, writes that she is a "...devoted mother and loving wife...[who has]...immense love...for her children."[10] Mr. Mutafchiev goes on to describe in agonizing detail the impact that Ms. Dilkinska's incarceration has had on her family's psyche."[11] Ivan Mutafchiev and Jorjeta Mutafchieva, the parents of Ms. Dilkinska's husband, write that she is a "...most wonderful, gentle, respective and polite

---

[2] *Id*. at 99.
[3] *Id*.
[4] *Id*. at 101.
[5] *Id*. at 102.
[6] *Id*. at 110.
[7] *Id*.
[8] *Id*. at 111.
[9] *Id*. at 14-56.
[10] *See* Exhibit A- Letter by Vasil Mutafchiev.
[11] *Id*.

person...[who is a]...caring and loving mother and wife, [and] good daughter with deep respect [for] her parents."[12]  Eleonara and Krum Nanevi, family friends of Ms. Dilkinska, write that she is "...a wonderful mother, wife, and friend."[13]  Gabriela Emilova Pavlova, another family friend writes that Ms. Dilkinska, "...is an understanding mother, loving wife...and educated person..."[14]  Elsa Zareva, another close friend, writes that she "...is a hardworking, conscientious, sociable and kind person...[who is]... responsible and disciplined in her work.[15]  Ivalyo Kirezon, another close friend, writes that Ms. Dilkinska is a "...very happy and loving person...[who]...takes great care of her kids, loves her dogs...[and]...has always been [a] very supportive wife and great friend."[16]

Indeed, all of the letters submitted on behalf of Ms. Dilkinska's behalf strike a similar tone: that she is good person, a loving wife and mother, and a caring friend.[17]  Her mother and sister love her dearly and describe in detail how helpful she has always been to them.[18]  Ms. Dilkinska clearly has much offer her family, her friends, and society.   She is an individual who is ultimately worthy of a second a chance.

Most striking among the letters, however, are the ones written by Ms. Dilkinska's husband and young children.  Svetoslav Dilkinski, Ms. Dilkinska's loving husband, writes that his wife is "...a wonderful, highly educated person with two high degrees...[who]...is a helpful, loving and purposeful person...[and who is a]...wonderful mother, wife and friend.[19]  Mr. Dilkinski reiterated his feelings about his wife when interviewed for the PSR.[20]  ▮▮▮▮▮▮▮▮, Ms. Dilkinska's 13-year old daughter writes that her mother is "...the most kind person on Earth...[and that the family]... love[s] her very much and miss[es] her very much."[21]  Ms. Dilkinska's daughter goes on to write that her life has been very hard without her mother in it.[22]  Lastly, ▮▮▮▮▮▮▮▮▮▮▮., Ms. Dilkinska's 10 year-old son, writes that he has the "best mother in the world" and that it has been very hard for him without her.[23]

---

[12] *See* Exhibit B- Letter by Ivan Mutafchiev and Jorjeta Mutafchieva.
[13] *See* Exhibit C- Letter by Eleonara and Krum Navevi.
[14] *See* Exhibit D- Letter by Gabriela Emilova Pavlova.
[15] *See* Exhibit E- Letter by Elsa Zareva.
[16] *See* Exhibit F- Letter by Ivalyo Kiresov.
[17]   *See* Exhibit G- Letters of support from others.
[18]  *Id*.
[19] *See* Exhibit H- Letter by Svetoslav Dilkinski.
[20] PSR ¶ 103.
[21] *See* Exhibit I- Letter by ▮▮▮▮▮▮▮▮
[22] *Id.*
[23] *See* Exhibit J- Letter by ▮▮▮▮▮▮▮▮▮▮▮.

4

# THE APPROPRIATE SENTENCE

The Court is required to consider the factors set forth in Title 18 U.S.C § 3553(a) and to impose a sentence that is both reasonable and "sufficient, but not greater than necessary, to comply with the purposes" reflected by the subsections of § 3553(a). The Probation Department has recommended that the Court sentence Ms. Dilkinska to a below-guidelines sentence of 96-months, however, after a review of his life and circumstances, it is submitted that a sentence of time-served is appropriate, reasonable, and warranted in this case.

The Probation Department has calculated Ms. Dilkinska's guidelines level as follows: the base offense level is six pursuant U.S.S.G. § 2B1.1(a)(1). An additional 30 points are added pursuant to U.S.S.G. § 2B1.1(b)(1)(P) because the fraud caused over $550,000,000 in losses. An additional six points are added pursuant to U.S.S.G. § 2 B1.1(b)(2)(C) because more than 25 people suffered substantial financial hardship. Two levels are added pursuant to U.S.S.G. § 2B1.1(b)(10)(B) and (C) because the scheme involved was concocted overseas and sophisticated in nature. Accordingly, the offense level is 44.[24] Additionally, a three-point enhancement pursuant to U.S.S.G. § 3B1.1(b)(2)(C), is applicable because Ms. Dilkinska, as a legal advisor for her co-conspirators, was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants. Lastly, a three-point reduction is warranted because Ms. Dilkinska has clearly demonstrated an acceptance of responsibility pursuant to U.S.S.G. §§ 3B1.1(a) and (b). Thus, with a total offense level is 43 and with a Criminal History Category of I, Ms. Dilkinska's guideline range is life. However, because the statutory maximum for the offenses is five years each, the Guideline range is 10 years. Despite the Guideline calculation mentioned above, there are persuasive reasons for a substantial downward variance pursuant to 18 U.S.C. § 3553(a).

**1) The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553 (a)(1)):**

a. **Nature and circumstances of the offense**

The charges to which Ms. Dilkinska pleaded guilty to are undoubtedly serious and she accepts full responsibility for her actions. However, any sentence above time-served would run the risk of creating a massive injustice. Simply put, Ms. Dilkinska's role in this matter is substantially different from the roles of all the co-defendants who were imprisoned in two meaningful ways. First, Ms. Dilkinska's actions in this case stemmed from her gainful employment as an attorney working for the co-defendants. She got this job after being away from her career for a lengthy period so she can raise her young children. What first seemed like a normal legal job, eventually ended with her making a series of regrettable mistakes. Specifically, she helped the co-defendants commit the fraud in question by helping them launder the proceeds of their crimes. However, there is no evidence that she participated in the fraud itself by lying to investors or making other misrepresentations. Second, she did not profit from any of her actions other than the middle-class salary she earned as an attorney working for her employers (i.e. the co-

---

[24] The offense level for Count Two is also 44 because the underlying crime for the money laundering carries an offense level of 44.

conspirators in this case).[25]  In other words she did not gain anything from her conduct.[26]  She worked as an attorney, and she got paid for that work.  There is no question that Ms. Dilkinska's actions in helping her employers launder the proceeds of their illegal activity is undoubtedly serious.  I am not suggesting that her conduct does not warrant punishment.  She should have quit her job.  She should have refused to help the co-conspirators by working for them.  However, a central reality exists that the reason the Guideline range is so high in this matter is because of the vast amount of money that was stolen through fraud, and it was not Ms. Dilkinska who stole this money or profited from the actions of those who did.  Thus, a substantial downward variance should be applied here.  Ms. Dilkinska has been in MDC for over a year and has been dealing with her extradition to the United States since 2021.  Thus, a sentence of the time she served is sufficient, but not greater than necessary to comply with the goals of 18 U.S.C. § 3553(a).

   **b. History and characteristics of the defendant:**

Ms. Dilkinska's background speaks for itself.  As does the grace with which she comported herself while incarcerated in this matter.  As is evidenced by the numerous letters of support submitted on her behalf, Ms. Dilkinska will have a supportive community when she returns to Bulgaria.  She is a deeply loved and missed mother.  She vows to never be in a situation like this again.

**2) The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(A)-(C)):**

Ms. Dilkinska is a wonderful mother.  She enjoys the full support of her community.  She also appreciates the serious nature of her crime and is deeply remorseful.  Notably, she has not only had no infractions while incarcerated, but she has completed numerous programs and taught others while incarcerated.[27]  Her time at the Metropolitan Detention Center (MDC) has been spent productively.  She finds herself in a horrific situation and never wants to be away from her home and her family again.

Unlike most inmates who are incarcerated near their home, Ms. Dilkinska has been completely alone in a foreign country during this sad time in her life.  She has not seen her children in over a year.  She has had no visits in over a year.  Her incarceration has been brutal.  It is impossible to quantify how devastating this year has been for Ms. Dilkinska.  Sentencing her to time-served would provide sufficient punishment for the offense.  Her year in prison will forever deter her from engaging in any kind of illegal activity again because she understands the pain that her decisions can cause her and her family.  Moreover, a sentence of one-year in prison would also deter the public from engaging in illegal activity overseas.  In addition to the sentence she receives,

---

[25]  The Government agrees that Ms. Dilkinska does not appear to have profited in any way from this scheme.

[26] This is a notable distinction from the other attorney accused of laundering money in this matter who, according to the Government, made $50,000,000.00, by aiding in the scheme.

[27] *See* Exhibit K- MDC Diplomas, Work History, and Letters of Commendation.

she is going to suffer the collateral consequences of this conviction for the rest of her life. She will be deported from the United States once the sentence is served and would likely not be allowed to enter in the future.

Mr. Dilkinska's entire pretrial incarceration has been at the MDC. The Court is familiar with recent accounts of life at the MDC as well as the facility's persistent shortcomings over the years. See *United States v. Morgan*, No. 19 Cr. 209 (RMB) (S.D.N.Y. May 5, 2020), Dkt. 90, Tr. 12-15 (describing the MDC as "dirty," "infested with drugs," and plagued by violence); see also *United States v. Boyd*, No. 21 Cr. 486 (SHS) (S.D.N.Y. Feb. 3, 2022), Dkt. 74 (describing overcrowding, staffing issues, and lockdowns at the MDC); *United States v. Days*, No. 19 Cr. 619 (CM) (S.D.N.Y. Apr. 29, 2021), Dkt. 35, Tr. 19 (describing MDC conditions as "disgusting [and] inhuman as anything I've heard about any Colombian prison, but more so because we're supposed to be better than that"). The conditions during Ms. Dilkinska's incarceration remain deplorable. Her confinement has been characterized by the threats of unchecked violence and by long and frequent periods of lockdown, without access to showers, recreation, telephone, email, visitation, commissary, or adequate meals. As the president of the jail's union wrote in a memo last year, MDC staffing shortages have produced "abusive and inhumane" conditions "as inmates often receive meals untimely, have no access to hygiene products and or the ability to shower; and lack access to adequate medical care."[28] Simply put, pretrial incarceration was never intended to occur this way. Thus, I submit that the Court should give special consideration to the harsh circumstances of Ms. Dilkinska's incarceration and give it due credit in determining an appropriate sentence.

**(3) The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care or other corrective treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D)):**

The primary goal of 18 § U.S.C. 3553(a) is to ensure that a federally convicted defendant does not re-offend. There is no question that the threat of prison acts as a deterrent for future criminal activity. A sentence of time-served would sufficiently deter Ms. Dilkinska from ever being in a situation like this again. Being incarcerated in a country foreign to her thousands of miles away from her family has been overwhelming. She vows to never before any prison away from her family ever again.

Moreover, Ms. Dilkinska was extradited to the United States from Bulgaria for the purposes of this prosecution. When she concludes her sentence, she will be immediately subjected to a removal proceeding. I respectfully request that the Court find that the fact that Ms. Dilkinska will be deported after she serves her sentence to a be a mitigating factor in determining the overall sentence. As a result of her looming deportation, she will not be a candidate for many programs or facility designations. Additionally, Ms. Dilkinska will be transferred into ICE custody and will thus be incarcerated longer pending her removal due to the ICE detainer. This will have the effect of lengthening her sentence beyond what the Court intends. I ask that the Court factor this in its sentencing determination.

---

[28] *See* Exhibit L- Letter by Brenda Barnwell, President of Union Representing staff at MDC Brooklyn.

**CONCLUSION**

Ms. Dilkinska understands the seriousness of her offense and is deeply regretful for her actions and remains especially remorseful to the Court. She intends to address the Court at her sentencing. However, she has also submits a letter that describes in her own words, what this year away from her family has done to her and to them. It also lays out in plain terms the remorse Ms. Dilkinska feels for those who suffered because of her actions.

As a result of Ms. Dilkinska's role in the instant offense, her personal history, and characteristics and the incredibly harsh conditions that she has endured during her incarceration, the proposed sentence of time-served is both reasonable and appropriate. She respectfully reserves the right to raise additional issues at the time of sentencing. The Court's time and consideration of this submission are greatly appreciated.

Respectfully submitted,

/s/
_____
John P. Buza, Esq.